O

# United States District Court
# Central District of California

| | |
|---|---|
| LUIS ANTONIO RAMIREZ AYALA,<br><br>    Plaintiff,<br><br>  v.<br><br>ERNESTO SANTACRUZ JR. et al.,<br><br>    Defendants. | Case № 2:25-cv-11496-ODW (PVCx)<br><br>**ORDER DENYING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [3]** |

## I. INTRODUCTION

  Petitioner Luis Antonio Ramirez Ayala brings this petition for a writ of habeas corpus against Respondents Ernesto Santacruz, Jr., Acting Director of Los Angeles Field Office, United States Immigration and Customs Enforcement ("ICE"); Pamela Bondi, Attorney General, United States Department of Justice; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Todd Lyons, ICE Acting Director.  (Pet. ¶ 1, Dkt. No. 1.)  Petitioner moves *ex parte* for an order prohibiting his detention pending adjudication of the merits of his case.  (Ex Parte Appl. ("TRO") 33, Dkt. No. 3.)  Respondents oppose the request.  (Opp'n, Dkt. No. 7.)  For the reasons discussed below, the Court **DENIES** Petitioner's TRO.

## II. BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection twenty-five years ago. (Pet. ¶ 19.) In 2004, Petitioner was granted Temporary Protected Status ("TPS"). (*Id.* ¶ 21.) Petitioner's TPS status was revoked in 2006 due to a felony conviction. (*Id.*) On or about November 28, 2007, Petitioner was placed in removal proceedings. (*Id.* ¶ 22.) On or about January 9, 2008, the immigration court served Petitioner with a notice of hearing to be held on January 25, 2008. (*Id.* ¶ 23.) However, Petitioner failed to appear at the hearing and the immigration judge ("IJ") ordered him removed in absentia. (*Id.* ¶ 24.)

In 2015, Respondents arrested Petitioner. (*Id.* ¶ 25.) On or about May 22, 2015, Petitioner filed a motion to reopen his removal proceedings, asserting lack of sufficient notice and prima facie eligibility for asylum, but failed to present evidence pertaining to country conditions. (*Id.* ¶ 26.) On or about June 25, 2015, the IJ denied Petitioner's motion. (*Id.*) The Board of Immigration Appeals ("BIA") and the Ninth Circuit affirmed the IJ's decision. (*Id.*) On November 25, 2015, the IJ found Petitioner eligible for bond and ordered his release. (*Id.* ¶ 27.) He was subsequently placed on an Order of Release on Recognizance ("OREC"). (*Id.*)

On or about March 3, 2025, Petitioner filed another motion to reopen and request for sua sponte action, asserting eligibility for cancellation of his removal. (*Id.* ¶ 29.) Petitioner is also a derivative beneficiary under his spouse's U visa Petition. (*Id.* ¶ 30.) At his last ICE check-in, ICE found Petitioner in compliance with the conditions of his OREC and ordered Petitioner to appear for his next check-in in March 2026. (*Id.* ¶ 31.) On November 14, 2025, ICE advanced Petitioner's check-in to December 4, 2025. (*Id.* ¶ 32.) Petitioner fears that Respondents will detain him on December 4, 2025, and execute the final order of removal without providing him an opportunity for non-refoulment screening and without conducting a review of his order of supervision. (*Id.* ¶ 33.)

1    Based on these allegations, on December 2, 2025, Petitioner filed a Petition for Writ of Habeas Corpus alleging that his potential re-detention violates his due process rights and various statutory protections. (*Id.* ¶¶ 55–107.) That same day, Petitioner filed this Ex Parte Application for a Temporary Restraining Order. (TRO.) Petitioner requests, among other things, that the Court (1) assume jurisdiction over this matter, (2) issue a TRO prohibiting his detention pending adjudication of the merits of this case, and (3) order that Petitioner remain subject to the conditions of his preexisting order of supervision. (*Id.* at 33.) After receiving Petitioner's TRO, the Court ordered an expedited briefing schedule and entered an administrative stay, enjoining Respondents from detaining or removing Petitioner while the Court ascertains its jurisdiction in this case. (Dkt. No. 5.)

### III. DISCUSSION

The Court must first consider whether it has jurisdiction to grant the requested relief. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Respondents argue that the requested relief, an order enjoining them from executing Petitioner's removal order, falls squarely within 8 U.S.C. § 1252(g)'s jurisdictional bar. (Opp'n 4–6.) Specifically, Respondents argue Petitioner's claim is barred by § 1252(g) because it arises from the government's discretionary decision to execute Petitioner's removal order. (*Id.*) Respondents contend that Petitioner's TRO, which seeks to limit when they can execute the removal order, is an improper attempt to impose judicial restraints on prosecutorial discretion. (*Id.* at 5–6.)

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Supreme Court has construed § 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to

1 impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999); *see Arce v. United States*, 899 F.3d 796, 800–01 (9th Cir. 2018) (holding that § 1252(g) is limited to the "three specific *discretionary* actions"). However, a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

The Ninth Circuit made clear that § 1252(g) strips district courts of jurisdiction over claims that challenge the decision to execute a removal order, notwithstanding pending applications for relief. *See Rauda v. Jennings*, 55 F. 4th 773, 778 (9th Cir. 2022). In *Rauda*, a case involving facts substantially similar to those here, the Ninth Circuit held that § 1252(g) deprived the court of jurisdiction over the petitioner's claims. *Id.* at 778. Like Petitioner here, the petitioner in *Rauda* was a citizen of El Salvador subject to a final removal order, sought to reopen his removal proceedings, and asked the district court to enjoin the government from executing the removal order until the BIA ruled on his motion to reopen. *Id.* at 776. The Ninth Circuit held that § 1252(g)'s "plain text" barred the district court's jurisdiction over the petitioner's claims. *Id.* at 777–78. It reasoned that "[t]he execution of [the petitioner's] removal order is precisely what" he challenged, meaning to "enjoin the government from removing him—or in other words, enjoin 'action by the Attorney General to . . . execute removal orders against [him].'" *Id.* at 777 (quoting § 1252(g)).

Petitioner contends that he is "not challenging the legality of his final order of removal, the decision of Respondents to initiate removal proceedings, to adjudicate any claims for relief from removal, or to execute the final order of removal." (Pet. ¶¶ 11, 24.) However, the relief he seeks does just that. Petitioner seeks to enjoin the execution of his removal order pending the adjudication of the merits of his motion to reopen his removal proceedings. (*See* TRO 33.) *Rauda* rejected this very same argument. The petitioner there insisted he was not challenging the removal itself but was only seeking time for the BIA to rule on his motion to reopen. *Rauda*, 55 F.4th

at 777. The Ninth Circuit nonetheless concluded that the petitioner's challenge fell within § 1252(g)'s jurisdictional bar because it sought to restrain the government from executing a removal order. *Id.* at 778 (holding that § 1252(g) bars any challenge to the discretionary decision to execute a removal order "[n]o matter how [a petitioner] frames it.") Moreover, the Ninth Circuit has made clear that section 1252(g)'s jurisdictional bar "does not include any temporal caveats." *Rauda*, 55 F.4th at 777. That is, "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." *Id.* (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)). As in *Rauda,* Petitioner's challenge here is foreclosed by § 1252(g)'s plain language.

In sum, § 1252(g) applies to Petitioner's request to enjoin the execution of his final removal order pending adjudication of the merits his case. Regardless of how Petitioner frames his challenge, he is ultimately contesting an unreviewable discretionary decision that has no temporal restrictions. *Rauda*, 55 F.4th at 780 ("[O]nce the removal order has withstood challenges before the IJ, the BIA, *and* [the Ninth Circuit], the government has discretion to decide *when* to remove an alien from a place he has no legal right to remain.") The Court that finds § 1252(g) bars such challenges from judicial review.

Accordingly, the Court lacks jurisdiction to review Petitioner's request to temporarily enjoin the execution of his final removal order.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the TRO. (Dkt. No. 3.) The Court also **LIFTS** its prior administrative stay and injunction. (Dkt. No. 5.)

**IT IS SO ORDERED.**

December 4, 2025

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE